301 S.E.2d 615

**STATE of West Virginia**

v.

**Janie B. WHITE.**

**No. 15567.**

Supreme Court of Appeals of West Virginia.

March 28, 1983.

---

Douglas Witten, Logan, for appellant.

Chauncey H. Browning, Jr., Atty. Gen., and Gregory W. Bailey, Deputy Atty. Gen., Charleston, for appellee.

PER CURIAM:

Janie B. White appeals from a June 22, 1982 final order of the Circuit Court of Logan County denying her motion for a new trial. White had been convicted of the second degree murder of Texas Dillon. In this appeal she assigns several supposed errors, each of which is without merit. Accordingly, we affirm.

On the evening of October 23, 1980, White, Texas Dillon, Patricia Anne Burgess, and Joseph Lee Brewster were present at a party at White's residence, along with several other people. A considerable amount of beer was apparently consumed and, at some point, White went to obtain more beer. Upon her return, she became involved in a heated argument with Dillon over a woman named Gay Hall. White was jealous of Dillon's feelings to-

ward Hall, and, when Dillon indicated his intention to leave White's residence, White told him he would not leave alive. The only other persons present at this time were Burgess and Brewster. They both testified as to the final moments of the encounter between White and Dillon.

The argument over Hall continued as White and Dillon moved from the living room to the kitchen. White struck Dillon several times, and then picked up a steak knife and attempted to stab him. Dillon caught her arm and forced her to release the knife. Dillon then turned away from White, and White, having retrieved the knife, stabbed him in the side of the abdomen.

White went to a neighbor's house and asked for help, stating that Dillon had been stabbed. The neighbor, Linda Fay Burns, noticed blood covering White's hands and stated that she would call the police. White took the phone from Burns saying that no police were needed. After some discussion, White left the Burn's house without placing a call. Burns then called the police and the ambulance.

At 4:05 A.M. on October 24, Sergeant C.R. Clinger and Deputy Russell Marcum of the Logan County Sheriff's office arrived at White's residence. They found Dillon in a fetal position on his side on the kitchen floor with a wound in his side. He appeared to the officers to be dead. White was seated on the couch in the livingroom.

Clinger and Marcum had been at the scene for ten to fifteen minutes when State Trooper R.W. Flaherty arrived. Flaherty asked White what happened and White told him that she had been sitting on the couch listening to music when she heard a thump. She claimed to have gotten up and found Dillon on the floor, stabbed to death. White was not taken into custody at that time.

At some time between nine and ten o'clock A.M. on October 24, Trooper Flaherty returned to White's residence with Trooper Marty Allen. They asked White if she would go to state police headquarters with them. She agreed. Upon arrival at headquarters, Trooper Allen read White the state police standard rights form, outlining, among others, her right to remain silent and her right to a lawyer.

White contends that, in response to her request for a lawyer, she was told that no lawyer would be available until Monday, October 27. The officers who questioned White testified that she did not request a lawyer at any time before or during her statement. After approximately ten minutes of questioning, White gave a written statement in her own hand, which statement was later read to the jury, over objection, by Trooper Allen. We have carefully examined the record of the pretrial hearing held to determine the admissibility of the statement, and conclude that the statement was made after White had been fully informed of her rights and that it was completely voluntary.[1] The trial judge was correct in admitting it.

At the conclusion of the evidence, the case was submitted to the jury, which returned a verdict of guilty of second degree murder. On June 22, 1981 White's motion for a new trial was denied, and this appeal followed.

White contends that her instructions on the defense of accidental death were erroneously refused and that state's instruction number 4, given by the court over objection, incorrectly stated that a killing done in the heat of passion may be murder in the second degree. She also contends that the trial court erred in allowing her written statement to be admitted and in failing to strike certain of the jury panel members for cause. We will address these assignments of error in order.[2]

---

1. The record contains a complete transcript of the in camera pre-trial hearing held to determine the admissibility of White's statement. White's contention that she was not afforded such a hearing is plainly contradicted by the record.

2. White also argues that the trial court erred in denying her action to direct a verdict of acquittal, as the state had failed to sustain its burden to prove her guilty beyond a reasonable doubt. The state's evidence was ample to present a jury issue as to White's guilt or innocence of second

■ Accidental death is a recognized defense to a murder charge in West Virginia. It has a long, and somewhat confused history in our case law, which we need not detail in full in this case. The defense was first recognized in West Virginia in *State v. Cross*, 42 W.Va. 253, 24 S.E. 996 (1896). The most extensive discussion of the defense found in West Virginia case law is contained in *State v. Legg*, 59 W.Va. 315, 53 S.E. 545 (1906).[3]

■ While White's instructions correctly stated the law regarding accidental killing, no evidence was introduced to support this theory. The testimony of eyewitnesses Burgess and Brewster could not support a finding of accidental killing, and White did not testify. As we stated recently in Syllabus point 8 of *State v. Hall*, 298 S.E.2d 246 (1982), "[a]n instruction to the jury is proper if it is a correct statement of the law *and if sufficient evidence has been offered at trial to support it.*"[4] (emphasis added). There was no evidence to support the accidental killing instructions, and they were properly refused.

■ State's instruction number 4 was somewhat inartfully worded, but it correctly set forth the elements of both voluntary manslaughter and murder in the second degree. See *State v. Slonaker*, 161 W.Va. 97, 280 S.E.2d 212, 215 (1981) and *State v. Green*, 157 W.Va. 1031, 1035, 206 S.E.2d 923, 926 (1974).

Upon review of the circumstances and testimony, it is apparent that White's statement to Trooper Allen was made after she was advised of her constitutional rights. She understood these rights and chose to waive them and make a statement, which was subsequently admitted at trial. White's contention that the statement was the product of an illegal arrest is without basis in the record. It appears that she accompanied Troopers Allen and Flaherty to headquarters completely voluntarily. *State v. Canby*, 166 W.Va. 666, 252 S.E.2d 164 (1979), cited by White, involved a statement obtained after an illegal arrest, and is inapposite. The statement was properly admitted.

■ Finally, we turn to White's contention that two veniremen should have been excused for cause. Venireman Redith Blankenship knew Trooper Allen socially. Venireman Robert Marcum, a former deputy sheriff, knew Allen and Sergeant Clinger through his former employment. White argues that the trial judge erred in refusing to strike these potential jurors for cause. Syllabus point 1 of *State v. Kilpatrick*, 158 W.Va. 289, 210 S.E.2d 480 (1974), quoted in Syllabus point 3 of *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981) and Syllabus point 7 of *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902 (1982), states that "[t]he true test as to whether a juror is qualified to serve on the panel is whether without bias or prejudice he can render a verdict solely on the evidence under the instructions of the court." Blankenship's testimony indicated only the most casual acquaintence with Trooper Allen. It appears from Venireman Marcum's testimony that he was last employed by the sheriff's department in 1973. He claimed that neither his former position as a deputy, nor his acquaintance with Allen and Clinger, would affect his impartiality. As we held in *Neider, supra*, "[w]e cannot conclude from the record that the venireman to whom defense counsel objected and who were permitted to remain on the panel were unable to render a verdict solely on the evidence adduced during the trial." 170 W.Va. at 669, 295 S.E.2d at 909.

degree murder, and the motion for a directed verdict was properly denied.

**3.** *State v. Bowles*, 117 W.Va. 217, 185 S.E. 205 (1936); *State v. Reppert*, 132 W.Va. 675, 52 S.E.2d 820 (1949); *State v. Shaffer*, 138 W.Va. 197, 75 S.E.2d 217 (1953) and *State v. Flint*, 142 W.Va. 509, 96 S.E.2d 677 (1957) also discuss the defense. But cf., *State v. Grimmer*, 162 W.Va. 588, 251 S.E.2d 780, 788 (1979) and *State v. Sims*, 162 W.Va. 212, 248 S.E.2d 834 (1978)

(discussing accidental killing in the context of the felony murder rule). For a general discussion of the defense, *see generally* 41 C.J.S. *Homicide* § 387 (outlining the defense and citing an abundance of related authority).

**4.** See also *State v. Wayne*, 162 W.Va. 41, 245 S.E.2d 838 (1978) (Syllabus point 3), quoting *State v. Wilson*, 145 W.Va. 261, 114 S.E.2d 465 (1960).

White's assignment of error being without merit, we affirm.

Justice Harshbarger, deeming himself disqualified, did not participate in the consideration or decision of this case.

Affirmed.