**FILED**

**October 17, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**State of West Virginia,**
**Respondent**

**vs.) No. 21-0227** (Barbour County 20-F-28)

**Carli Renae Reed,**
**Petitioner**

## MEMORANDUM DECISION

Petitioner Carli Renae Reed ("Petitioner"),[1] appeals the Circuit Court of Barbour County's February 19, 2021, order sentencing her to forty years in prison after a jury found her guilty of second-degree murder. The victim was Petitioner's husband, Marcus Fagons ("Mr. Fagons"). The dispositive issue Petitioner raises in this appeal is whether the circuit court erred by refusing to give a jury instruction on the defense of accident. Petitioner's trial testimony was that she accidentally shot Mr. Fagons. The State vigorously cross-examined her on this issue and argued that she intentionally shot Mr. Fagons because he was having an affair and wanted a divorce. The circuit court refused to give the requested accident instruction, finding that it was "not necessary and if they [the jury] believe it was an accident then there will not be a crime."

Upon review, we conclude that under our well-established caselaw, the circuit court abused its discretion by failing to give Petitioner's requested accident instruction. *See State v. Evans*, 172 W. Va. 810, 310 S.E.2d 877 (1983). Therefore, we reverse Petitioner's conviction and sentencing order, and remand this case for a new trial. We find that this case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for disposition by a memorandum decision.

Petitioner shot and killed Mr. Fagons on August 15, 2019. They had been married for approximately three years at that time. Petitioner was indicted by a grand jury for first-degree murder on June 15, 2020.

---

[1] Petitioner is represented by counsel Hunter B. Mullens, C. Brian Matko, and Matthew L. Ervin. The State is represented by counsel Patrick Morrisey and Mary Beth Niday.

Petitioner's trial began on September 16, 2020, and lasted for seven days. The State's theory of the case was that Petitioner intentionally shot and killed Mr. Fagons because he was having an affair and wanted a divorce. During its opening statement, the State asserted that Petitioner and Mr. Fagons had a "toxic relationship," and that "[t]he truth is going to be that [Petitioner] was angry, that she was frustrated that her husband had found someone else, that her husband was having an affair and wanted to leave her. And for that reason, she took his life."

Conversely, Petitioner testified that she did not intend to kill Mr. Fagons. She stated that on the day of the shooting, she and Mr. Fagons discussed getting a divorce. Petitioner testified that after this discussion, she was having suicidal thoughts and decided to kill herself. She stated that Mr. Fagons's holstered gun was on the nightstand in their bedroom; that she went into the bedroom where Mr. Fagons was lying on the bed; that she grabbed the gun with the intention of killing herself and that the gun went off. Petitioner claimed that after the gun went off, she was disoriented and confused, but that Mr. Fagons was lying on the bed with his eyes shut and that he was breathing. Petitioner and her counsel then had the following exchange:

Q. Did you mean to shoot Marcus?

A. No.

Q. Was it an accident?

A. Yeah.

Q. And what were you hoping when you were in shock that you had missed as far as the gun missed when it went off, that it had missed Marcus?

A. Yeah. And I didn't know how to help him, and I knew that mom would know what to do.

After describing the aftermath of the shooting, including being in shock and seeking help from her mother who lived five minutes away, Petitioner's counsel again asked her whether the shooting was intentional:

Q. And once again I'm going to ask you, did you mean, intend to shoot Marcus?

A. No. I meant to kill myself.

Q. Was it an accident?

2

A. It was.

During cross-examination, the State repeatedly asked Petitioner whether she intended to shoot Mr. Fagons:

Q. You weren't taking the gun out to kill Marcus, right?

A. No.

Q. So you weren't - - at that time you didn't have - - you weren't overcome by any form of like emotions to kill him, right?

A. No.

Q. Okay. Do you feel that you were relatively calm when you were doing that?

A. I was pretty hysterical actually because I was going to kill myself. You know I was crying and I thought, you know, this was it for me.

Q. So your intent at that point was to commit suicide?

A. Correct.

Q. Your specific intent at that time was to kill yourself?

A. Yes.

Q. And you fully remember doing that?

A. Yes.

Q. So you did not shoot Marcus because of this prior alleged abuse?

A. No.

Q. You shot him because you're saying it was an accident?

A. Correct.

3

On redirect examination, Petitioner's counsel again asked Petitioner whether the shooting was an accident:

> Q. Now Carli, the prosecutor was questioning what happened on the 15th. Were you or were you not trying to commit suicide that day?
>
> A. I was.
>
> Q. Was this an accident?
>
> A. It was.

The circuit court held a brief conference on its proposed jury instructions on the second to last day of the trial. Prior to the trial, Petitioner submitted a number of proposed jury instructions to the circuit court, including an accident instruction. It provided:

> The defendant has presented evidence that the death of [Mr. Fagons] was an accident. While it is never the defendant's burden to prove anything, if you find the defendant's evidence of accident to be credible, then the State must prove beyond a reasonable doubt that the death was not accidental. If the State has not met this burden, then you must find the defendant not guilty of the offense charged.

During the jury instruction conference, the circuit court invited the parties to note any objections to the instructions it had prepared. Counsel for Petitioner reminded the circuit court that Petitioner had "submitted a charge on accident . . . based on [Petitioner's] testimony that it was an accidental shooting." The circuit court replied:

> I saw the instruction on accident and I specifically left it out. The Court considered that and deemed that it was not necessary and if they [the jury] believe it was an accident then there will not be a crime. So accident being something less than involuntary manslaughter they would assume. So a complete accident I don't think there's any real caselaw on what should happen in an accident except for coming in and saying it was an accident and seeing how the jury takes that. So[,] I think that's a common usage much more than a legal usage. And I think that accident would necessarily be included in a not guilty.

4

Following the circuit court's explanation, Petitioner's counsel objected to the court's ruling.

The parties' closing arguments focused largely on Petitioner's testimony that the shooting was accidental. The State noted that Petitioner claimed that the shooting was an accident and argued that this testimony was not credible.[2] During Petitioner's closing argument, her counsel told the jury that Petitioner was in a "fragile" state of mind due to the divorce discussion, that she grabbed the gun from the nightstand with the intention of committing suicide, and that the gun accidentally went off. Petitioner's counsel told the jury "[y]ou can also find her not guilty if you believe it was an accident."

The jury found Petitioner guilty of second-degree murder.[3] The circuit court entered an order sentencing her to forty years in prison. This appeal followed.

We review a circuit court's refusal to offer a requested jury instruction under an abuse of discretion standard. In syllabus point one of *State v. Hinkle*, 200 W. Va. 280, 489 S.E.2d 257 (1996), we held: "As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo*."[4] Additionally, we have held that "[w]hether facts are sufficient to justify the delivery of a particular instruction is reviewed by this Court under an abuse of discretion standard. In criminal cases where a conviction results, the evidence and any reasonable inferences are considered in the light most favorable to the prosecution." Syl. Pt. 12, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994).[5] With the foregoing in mind, we turn to the parties' arguments.

---

[2] The State's closing argument included the following statements: 1) "she is basing her case on accident;" 2) "no person accidentally shoots their spouse and leaves them like that;" 3) "she relies on [that] it was an accident;" 4) "she never said it was an accident until months later;" 5) "nothing points to [the conclusion that] this was an accident;" 6) "this is no accident . . . and that story she told you of an accident, it is nothing more than a lie."

[3] The circuit court instructed the jury on the following offenses: first-degree murder, second-degree murder, voluntary manslaughter, and involuntary manslaughter.

[4] Generally, when reviewing a challenge to jury instructions, we consider the instructions given as a whole and not in isolation to determine whether the instructions adequately state the law and provide the jury with an ample understanding of the issues and the law. *State v. Bradshaw*, 193 W. Va. 519, 543, 457 S.E.2d 456, 480 (1995).

[5] This Court has also addressed the degree of evidence necessary to support the giving of a jury instruction: "If there be evidence tending in some appreciable degree to support the theory of proposed instructions, it is not error to give such instructions to the

Petitioner has asserted numerous assignments of error.[6] We find that the dispositive issue is Petitioner's contention that the circuit court erred by refusing to give her requested accident instruction. Petitioner asserts that: 1) "sufficient testimony was provided at trial to support a defense of accident;" 2) "without the instruction, the jury is unaware that accident is a recognized defense and the trial court's failure to give the instruction minimized the weight of the testimony;" and 3) "the trial court was mistaken on whether accident was a legal defense to the charge of murder." We agree.

It is well-settled that "in criminal cases a defendant generally is entitled to a jury charge that reflects any defense theory for which there is a foundation in the evidence." *State v. LaRock*, 196 W. Va. 294, 308, 470 S.E.2d 613, 627 (1996). This Court has previously considered whether a defendant's testimony that a shooting was accidental is sufficient to support a request for an accident instruction.

In *State v. Evans*, 172 W. Va. 810, 310 S.E.2d 877, the defendant testified that the victim was handling one of his guns and that he asked the victim to hand the gun

---

jury, though the evidence be slight, or even insufficient to support a verdict based entirely on such theory." Syl. Pt. 4, *Coleman v. Sopher*, 201 W. Va. 588, 499 S.E.2d 592 (1997) (cleaned up).

[6] Petitioner argues that the circuit court's jury instruction on the defense of battered woman's syndrome was erroneous. Petitioner contends that the court's instruction was "insufficient, failed to adequately instruct the jury on the law regarding battered woman's syndrome and was misleading." Additionally, Petitioner asserts that the circuit court committed a number of errors in its pretrial rulings including: 1) its denial of Petitioner's motion in limine to preclude the introduction of body camera footage recorded by one of the police officers who entered Petitioner's residence after the shooting; 2) its granting of the State's motion to bifurcate the trial; and 3) its denial of Petitioner's "Notice of Intent to Use and Motion to Admit Rule 404(b) Evidence," in which Petitioner sought to introduce evidence of Mr. Fagons's physical, verbal, emotional, and sexual abuse against her, her family, and Mr. Fagons's past romantic partners. Further, Petitioner argued that the circuit court erred in a ruling it made during the trial when it found that the State had not opened the door in its questioning of a witness such that Petitioner should have been allowed to introduce evidence of Mr. Fagons's past abuse of romantic partners. Additionally, Petitioner argued that the State violated her right to due process and right to confront the witnesses against her by failing to provide her with transcripts from prior hearings in a timely manner. Finally, Petitioner asserted that her right to due process was violated when the circuit court entered orders after Petitioner filed her notice of appeal with this Court. Because we find that the circuit court's failure to instruct the jury on the defense of accident constitutes reversible error, we decline to address the additional assignments of error raised by Petitioner.

back to him. *Id.* at 814, 310 S.E.2d at 881. The defendant testified that "[a]s the gun came into [his] hand, it discharged, firing the fatal bullet into [the victim's] face just above the right eyebrow." *Id.* Based on this testimony, the defendant requested a jury instruction on accident. The prosecutor objected to the accident instruction on "the ground that it was not supported by the evidence. The trial court, on the other hand, commented: 'It's misleading because it would rule out involuntary manslaughter.'" *Id.* Thus, the court did not instruct the jury on accident and the defendant was found guilty of second-degree murder.

This Court reversed the defendant's conviction in *Evans*, finding that "the trial court's refusal to give a proper instruction on accidental discharge of the weapon constitutes reversible error." *Id.* at 815, 310 S.E.2d at 882. In so ruling, the Court noted that "[a]ccidental death is a recognized defense to a murder charge in West Virginia. *State v. White*, 171 W.Va. 658, 301 S.E.2d 615 (1983). *The trial testimony of the appellant provided sufficient evidentiary support for the instruction on accident.* Indeed, the instruction is a crystallization of the appellant's defense theory." *Id.* (emphasis added).

As noted by this Court in *Evans*, and a number of other cases,[7] accidental death is a recognized defense to murder. In syllabus point ten of *State v. Legg*, 59 W. Va. 315, 53 S.E. 545 (1906), the Court held:

> Where one, upon an indictment for murder, relies upon accidental killing as a defense, and there is evidence tending in an appreciable degree, to establish such defense, it is error to refuse to instruct the jury that if they believe from the evidence that the killing was the result of an accident, they should find the defendant not guilty.

Like the defendant in *Evans*, Petitioner's trial testimony provided sufficient evidentiary support for her requested accident instruction. Further, it is clear that the circuit court erred when it concluded that the accident instruction was unnecessary and that there is not "any real caselaw on what should happen in an accident except for coming in and saying it was an accident and seeing how the jury takes that." As noted above, this Court has held that accidental death is a defense to murder and that a defendant asserting this defense is entitled to a jury instruction on accident if the instruction is supported by the evidence. Therefore, we find that the circuit court abused its discretion by refusing to instruct the jury on accident in the instant case.

---

[7] It appears this defense was first recognized in West Virginia in *State v. Cross*, 42 W. Va. 253, 24 S.E. 996 (1896). *See also State v. Bowles,* 117 W. Va. 217, 185 S.E. 205 (1936); *State v. Reppert*, 132 W. Va. 675, 52 S.E.2d 820 (1949); *State v. Shaffer*, 138 W. Va. 197, 75 S.E.2d 217 (1953).

While we find the circuit court abused its discretion by refusing to give the accident instruction, that is not the end of our inquiry. This Court has held that:

> A trial court's refusal to give a requested instruction is reversible only if: (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense.

Syl. Pt. 11, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731.

We find Petitioner easily satisfies this three-part test. First, there is no dispute that the accident instruction Petitioner offered was a correct statement of the law. Second, the jury instructions did not address our law on accidental death. Thus, it is clear that the requested accident instruction was not "substantially covered in the charge" given to the jury. Finally, the issue covered by the instruction—whether the shooting was an accident—was important to the outcome of the trial and was central to Petitioner's defense. We agree with Petitioner that "without the instruction, the jury [was] unaware that accident is a recognized defense and the trial court's failure to give the instruction minimized the weight of [Petitioner's] testimony." While "[t]he jury is the trier of the facts . . . there is no presumption that they are familiar with the law." *State v. Lindsey*, 160 W. Va. 284, 291, 233 S.E.2d 734, 739 (1977) (cleaned up). Similarly, this Court has observed that "[w]ithout [adequate] instructions as to the law, the jury becomes mired in a factual morass, unable to draw the appropriate legal conclusions based on the facts." *State v. Guthrie*, 194 W. Va. 657, 672, 461 S.E.2d 163, 178 (1995) (cleaned up). The circuit court's failure to give the requested accident instruction left the jury with no guidance on what the law required if it concluded that the shooting was accidental. Thus, Petitioner satisfies the third prong of the *Derr* test.

Based on all of the foregoing, we find that the circuit court's refusal to instruct the jury on the defense of accident constitutes reversible error. Petitioner's conviction and sentencing order are reversed, and this case is remanded for a new trial.

Reversed and remanded.

**ISSUED:** October 17, 2022

**CONCURRED IN BY:**

Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn

**CONCURRING and WRITING SEPARATELY:**
Chief Justice John A. Hutchison

Hutchison, C.J., concurring:

I concur with the majority that, given petitioner's trial testimony that she accidentally shot her husband, Marcus Fagons, during a botched suicide attempt, the trial court committed reversible error by refusing to instruct the jury on the defense of accident. I write separately, however, to highlight what I perceive to be a critical evidentiary error, not addressed by the majority, concerning petitioner's alternate defense theory of Battered Woman's Syndrome.[1] She alleges that Mr. Fagons sexually, physically, and emotionally abused her on a regular basis over the course of several years. This Court has held that "'evidence that the decedent had abused or threatened the life of the defendant is . . . relevant and may negate or tend to negate a necessary element of the offense(s) charged, such as malice or intent.'" Syl. Pt. 1, in part, *State v. Stewart*, 228 W. Va. 406, 719 S.E.2d 876 (2011) (quoting Syl. Pt. 4, in part, *State v. Harden*, 223 W. Va. 796, 679 S.E.2d 628 (2009)) (emphasis added). Further,

> [i]n cases involving Battered Woman's Syndrome, evidence that a victim had abused the defendant may be considered by the jury when determining the factual existence of one or more of the essential elements of the crime charged, such as premeditation, malice or intent. It is generally the function of the jury to weigh the evidence of abuse and to determine whether such evidence is too remote or lacking in credibility to have affected the defendant's reasoning, beliefs, perceptions, or behavior at the time of the alleged offense.

---

[1] We have held that, at trial, "a criminal defendant may present alternative defenses even when they are inconsistent[.]" Syl. Pt. 2, in part, *State v. McCoy*, 219 W. Va. 130, 632 S.E.2d 70 (2006).

Syl. Pt. 3, *Stewart*, 228 W. Va. at 409, 719 S.E.2d at 879.

In the face of the prosecution's theory that petitioner fabricated and/or exaggerated the extent to which Mr. Fagons abused her, and that it was petitioner who was the aggressor in the couple's relationship, petitioner sought to present probative evidence in her defense under West Virginia Rule of Evidence 404(b).[2] More specifically, T.C., Mr. Fagons's former girlfriend and the mother of his child, testified at a pre-trial hearing[3] that, during her one-year relationship with Mr. Fagons, he brutally beat, raped, and emotionally abused her on a regular basis. Similar to petitioner's testimony about her relationship with Mr. Fagons and the abuse he routinely inflicted, T.C. testified that she was younger than Mr. Fagons and considered to be "quiet"; that Mr. Fagons isolated her from everyone but her family; that Mr. Fagons lived off of T.C. and her family; that he physically and sexually abused T.C. in private; and that he regularly raped her vaginally and anally.

Unfortunately, the prosecutor convinced the trial court to cripple petitioner's battered woman defense and rule that T.C.'s testimony was inadmissible at trial. The court's ruling found that Rule 404 "prohibits the use of character evidence to show that on a particular occasion a person [i.e., Mr. Fagons] acted in accordance with the character trait[;]" that the "legitimate reasons offered [for admission under Rule 404(b)] by [petitioner] are not convincing [but were offered] merely to show that Marcus Fagons acted in accordance with a character trait (that he was a domestic batterer), i.e. he did it before so he did it again[;]" that the "evidence of domestic abuse against a third party" is not relevant,[4] and that, even if such evidence were relevant, the probative value of T.C.'s

---

[2] West Virginia Rule of Evidence 404(b) provides, in relevant part:

> (1) *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) *Permitted Uses; Notice Required.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

[3] This hearing was held pursuant to Syllabus Point 2 of *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994).

[4] *See* W.Va. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.")

testimony was "substantially outweighed by the danger of confusing the issues and misleading the jury."[5]

I believe that this analysis of T.C.'s testimony was in error. T.C.'s testimony is relevant, probative, critical to petitioner's defense, and should be admitted at the trial on remand under the "Reverse 404(b)" theory. Let me explain.

It is well understood that Rule 404(b) protects "the criminal defendant from risking conviction on the basis of the defendant's character." *United States v. Ballou*, 59 F.Supp.3d 1038, 1051 (D. N.M. 2014). The rule addresses concerns that the jury may convict a defendant it believes "deserves to be punished not because he is guilty of the crime charged but because of his prior or subsequent misdeeds" or that "the jury will infer that because the accused committed other crimes he probably committed the crime charged." *United States v. Phillips*, 599 F.2d 134, 136 (6th Cir. 1979). *Accord United States v. Aboumoussallem*, 726 F.2d 906, 911 (2d Cir. 1984) (Evidence of a defendant's prior wrongdoings "is objectionable not because it has no appreciable probative value but because it has too much. Presumably, the 'too much' argument means that a guilty person, and, of far more serious concern, an innocent person, may be convicted primarily because of the jury's willingness to assume his present guilt from his prior misdeed." (footnotes and citations omitted)). Given these concerns, Rule 404(b) clearly applies to preclude the introduction of a defendant's prior bad acts by the prosecution.

But this case is distinguishable from the typical Rule 404(b) case because it is the defendant who sought to present similar acts evidence of a third party (the victim) in order to prove a critical fact of her defense. Such evidence, recognized by many jurisdictions as "reverse 404(b)" evidence,[6] is admissible at trial. *See e.g., United States v. Reed*, 259 F.3d 631, 634 (7th Cir. 2001); *United States* v. Rubio, 87 F.3d 1309 (4th Cir. 1996) (unpublished table opinion). This is because the "risks of prejudice are normally

---

[5] *See* W. Va. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.")

[6] *See United States v. Ballou*, 59 F.Supp.3d 1038 (D. N.M. 2013) (discussing cases). Further, "[t]he West Virginia Rules of Evidence are patterned upon the Federal Rules of Evidence, and we have repeatedly recognized that when codified procedural rules or rules of evidence of West Virginia are patterned after the corresponding federal rules, federal decisions interpreting those rules are persuasive guides in the interpretation of our rules." *State v. Sutphin,* 195 W.Va. 551, 563, 466 S.E.2d 402, 414 (1995) (citations omitted). *See also* Syl. Pt. 3, *Brooks v. Isinghood*, 213 W. Va. 675, 584 S.E.2d 531 (2003) ("A federal case interpreting a federal counterpart to a West Virginia rule of procedure may be persuasive, but it is not binding or controlling.").

absent when the defendant offers similar acts evidence of a third party to prove some fact pertinent to the defense. In such cases the only issue arising under Rule 404(b) is whether the evidence is relevant to the existence or non-existence of some fact pertinent to the defense." *Aboumoussallem*, 726 F.2d at 911-12. The standard of admissibility where the similar acts evidence is offered by the criminal defendant "as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword." *Id.* at 911. Accordingly, "a lower standard of similarity [between the crime at issue and 'other crimes' evidence] should govern 'reverse 404(b)' evidence because prejudice to the defendant is not a factor." *United States v. Stevens*, 935 F.2d 1380, 1403 (3d Cir. 1991).

"Reverse 404(b)" evidence is thus "admissible for defensive purposes if it tends, alone or with other evidence, to negate the defendant's guilt of the crime charged against him." *Reed*, 259 F.3d at 634 (internal citation omitted). As one court observed, "reverse 404(b)" evidence is offered "for the purpose of *generating reasonable doubt*" whereas 404(b) evidence that is offered by the prosecution against the defendant is "to attempt to *prove* guilt *beyond a reasonable doubt.*" *United States v. Islas-Bravo*, No. CR 07-3039-MWB, 2008 WL 2783271, *6 (N.D. Iowa 2008).

Thus, "the admissibility of 'reverse 404(b)' evidence depends on a straightforward balancing of the evidence's probative value against considerations such as undue waste of time and confusion of the issues." *Stevens*, 935 F.2d at 1404-05. In other words, the "resolution of this issue is informed by [the] general belief that a criminal defendant should be able to advance any evidence that, first, rationally tends to disprove his guilt, and second, passes the Rule 403 balancing test." *Id.* at 1406. *See also United States v. McClure*, 546 F.2d 670, 672-73 (5th Cir. 1977) (holding that under Rule 404(b), "evidence of a [third party's] systemic campaign of threats and intimidation against other persons is admissible to show lack of criminal intent by a defendant who claims to have been illegally coerced" into selling drugs and explaining that a more relaxed standard for admissibility of the evidence applies because the defendant had a "right to present a vigorous defense . . . .The fact that [the evidence] referred exclusively to threats made by [the third-party] after the sales by appellant affects its weight but not its admissibility.").

In the present case, when confronted with the prosecution's theory that petitioner fabricated or exaggerated the extent to which Mr. Fagons abused her for several years and that she was the aggressor in the relationship, petitioner sought to introduce testimony from T.C. (Mr. Fagons's former girlfriend) that, similar to petitioner's own experience, Mr. Fagons emotionally abused her and brutally beat and raped her on a regular basis during the course of their relationship. Petitioner sought to introduce this similar-acts evidence in order to mitigate her guilt – that is, to lend credence to her defense that she was a battered spouse, thereby negating premeditation, malice, or intent to kill her husband. *See* Syl. Pt. 1, in part, *Stewart*, 228 W. Va. at 409, 719 S.E.2d at 879. This evidence was clearly relevant to the existence of a fact pertinent to petitioner's defense. *See Aboumoussallem*, 726 F.2d at 912. Under the balancing requirements of Rule 403, the

probative effect of this evidence, in my view, is far greater than any potential confusion of the issues or possibility that the jury could be misled. A jury is fully capable of discerning the purpose of T.C.'s testimony. Hence, on remand, petitioner should be allowed to introduce evidence in support of her defense, and the jury be permitted to decide the veracity and probative effect of that evidence.

With that said, I respectfully concur.