STATE OF WEST VIRGINIA

*v.*

LEE GAREL SHAFFER

(No. 10496)

Submitted January 28, 1953. Decided March 31, 1953.

*Cleo S. Jones,* for plaintiff in error.

*John G. Fox,* Attorney General, *George W. Stokes,* Assistant Attorney General for defendant in error.

GIVEN, JUDGE:

Lee Garel Shaffer was convicted of murder of the second degree, for the fatal shooting of Russell Harding, at the October, 1951 term of the Intermediate Court of Kanawha County, and sentenced to serve an indetermi-

nate term of 5 to 18 years in the West Virginia State Penitentiary. On February 23, 1952, the Circuit Court of Kanawha County entered an order refusing a writ of error to the judgment of the Intermediate Court, to which this Court granted a writ of error.

The facts in the case may be briefly stated. The deceased had been staying at the Shaffer home, with the defendant and the defendant's wife and children, for a period of nine days, during which time there had been a great deal of drinking of intoxicating liquor. On May 22, 1951, the day of the shooting, the deceased and the defendant, with others, had been drinking in the afternoon. The deceased, in company with one Frank Holmes, left the Shaffer home around 6:30 p. m., returning around 9:30 or 10:00 p. m. in an intoxicated condition, and, at which time, everyone at the Shaffer home was in bed. The deceased was admitted by a Mrs. Anderson, a witness in behalf of the State, who testified that he slapped her and then proceeded into the bedroom where the defendant and his wife were in bed. He jumped into the bed and began cursing and abusing the defendant, whereupon the defendant and others sought to pacify him. The deceased was persuaded to go out on the porch by Holmes, where he became quiet. He later reentered the house and the bedroom of the defendant, where the latter was lying on the bed, whereupon a shot was fired which struck the deceased in the forearm and abdomen, causing his death a short time thereafter. The defendant maintains that the deceased reentered the room, and, still using abusive language, grabbed him and began twisting his leg, whereupon the defendant picked up a shotgun from beside the bed, believing it to be unloaded, and pointed it at the deceased, intending to bluff him, at which time the deceased jerked the leg of the defendant and the gun discharged.

The defendant, in relating his version of the incident at the trial, was asked this question:

"Q. Did you know it was loaded at the time you picked it up?

"A. I did not. The reason was, I never kept it loaded and around the house."

A motion to strike the defendant's answer was sustained by the court.

In regard to the loading of the shotgun, the defendant's fifteen year old son testified that he had been hunting during the afternoon of the day of the shooting, had loaded the gun at that time and had forgotten to unload it. Mrs. Anderson, testifying in rebuttal for the State, stated that the defendant loaded the gun a few days prior to the homicide at a time when the defendant was threatening his wife for having remained away from home with Mrs. Anderson until a late hour of the night. This statement was denied by both the defendant and his wife.

Upon this writ of error, the defendant contends that the court erred in excluding defendant's statement as to his reason for believing the gun to be unloaded, in the giving of State's Instructions Nos. 2, 3 and 5, and in refusing to give Defendant's Instructions Nos. 9, 10, 13, 14, 15, 18 and 20.

The principal defense of the defendant was that of accidental killing, and undoubtedly it would have been prejudicial to him to strike from the jury's consideration his answer to the question heretofore quoted to the effect that he did not know the gun was loaded at the time he picked it up, because he never kept it loaded and around the house, if that had been the only testimony relating to that matter. However, in his answer to the preceding question, the defendant was permitted to testify that:

"I didn't keep my gun in the house loaded, but I later learned that Jackie, my oldest boy, got hold of it. I didn't allow him to take it out. He slipped the dog out to try him out and he brought the gun back loaded. I never kept the gun loaded."

It may, therefore, be assumed that the trial court sustained the motion of the State to strike the answer of the defendant for the reason that it was repetitious. It is apparent from the defendant's testimony, as well as that of other defense witnesses, that the defense theory, to the effect that the defendant believed the gun to be unloaded when he picked it up and pointed it at the deceased, was clearly presented to the jury.

"The rejection of certain evidence is not reversible error where the facts sought to be proved are established by other evidence." 1 M.J., Appeal and Error, § 306. The jury was fully instructed as to the defense of accidental killing.

State's Instruction No. 2 informed the jury that where an unlawful homicide is proved, the presumption in this State is that it is murder of the second degree, and the burden is on the State of showing, if she can, that it was murder of the first degree; and upon the accused of showing, if he can, that it was without malice, and, therefore, the offense was manslaughter, or that the defendant acted lawfully and was not guilty.

The defendant strongly urges that the giving of this instruction in this case was reversible error, citing *State v. Cross,* 42 W. Va. 253, 24 S. E. 996 and *State v. Graham,* 94 W. Va. 67, 117 S. E. 699, as holding that the defense of accidental killing in a homicide case constitutes an exception to the general rule that every unlawful homicide is presumed to be murder in the second degree. We think the cases are not authority for the proposition for which cited. In the *Cross* case, the sole defense was accidental killing. In the opinion it is pointed out that "There was no evidence of premeditation or intentional killing." In the instant case, accidental killing was not the sole defense, and there was substantial evidence of intentional killing. In the *Graham* case, the giving of an instruction somewhat similar to the State's Instruction No. 2 in the instant case was held to constitute error, but the instruction was erro-

neous "because it leaves the matter in doubt whether the accused may be found guilty of a lesser offense than manslaughter or whether he may be acquitted; there being no other instruction given substantially covering this phase of the case."

The defense interposed by one charged with crime under an indictment is not the controlling factor as to what instructions may properly be given to the jury by the court. Instructions are based upon competent, relevant and admissible evidence which has been introduced by either the State or the defendant. In *State* v. *Legg*, 59 W. Va. 315, 53 S. E. 545, a case in which the defense was accidental killing, this Court held that: "Where, upon a trial for murder, the killing is shown to have been done with a deadly weapon, and the defendant relies upon accidental killing as an excuse, it is a question for the determination of the jury as to whether the killing was intentional, or the result of an accident. And when the evidence tends, in an appreciable degree, to establish both theories, it is the duty of the court to instruct the jury presenting both, if asked to do so."

The 7th syllabus point in *State* v. *Clifford*, 59 W. Va. 1, 52 S. E. 981, is to the same effect: "The defense of accidental and unintentional killing does not preclude the giving of instructions embodying the law relating to any offense charged in the indictment which the evidence tends to prove." This principle has consistently been followed by this Court in other cases, and we find no authority to the contrary.

Virginia Anderson quoted the defendant as saying shortly before the shooting that "they would quiet down or he would kill somebody." O. S. Neely, a member of the Department of Public Safety of this State, and a witness for the State, testified that upon arriving at the Shaffer home for the purpose of arresting the defendant, that the latter stated:

"Mr. Neely, I killed another of the damned

Hardings. If I can't run this house I will rent it."

Troopers Neely and Vandevender both testified that at the same time and place, the defendant made this further statement relative to the shooting of the deceased Harding:

"All you need out here on this road is more like me to wipe out all the damn Hardings. They don't fool with old Garel Shaffer. I shot him and I am glad of it."

In a formal statement to Troopers Neely and Vandevender, on the morning following the homicide, which statement was introduced in evidence and read to the jury, without objection, the defendant said:

"* * * We told him [Harding] to behave that that wasn't nice. I got up and walked over and layed down on the bed in the front room—the living room. He came back inside and grabbed Lowell Campbell by the foot and jerked Lowell out in the middle of the floor. He kicked my stove over and he said 'Garel, I'm going to jump in that bed and stomp your god damn brains out.' I told him that he had better go off and sit down. My shot gun was beside my bed. He made another leap across the floor and I pulled the trigger. That stopped the music for a little bit. * * *"

The jury had before it evidence which at least met the minimum requirements of the rule laid down in the *Legg* and *Clifford* cases "tending in an appreciable degree" to establish the theory of the State that the killing was intentional. In these circumstances, the State had the right to have the jury instructed as to its theory of the case. There was no error, therefore, in the giving of State's Instruction No. 2.

We have given careful consideration to the refusal of the trial court to give Defendant's Instruction No. 9, which is as follows:

"The Court instructs the jury that if you believe from the evidence in this case that the defendant thinking that the gun was not loaded, and pointed it toward Harding for the purpose of bluffing him into leaving his home, and if the defendant had reason to believe and did believe such was necessary to force Harding to leave the house and to protect himself from bodily harm, then regardless of how the gun was discharged, you must find the defendant not guilty."

The evidence as heretofore related discloses that the deceased had been staying at the Shaffer home for several days prior to the homicide during which time the deceased, the defendant and others had been engaged in a prolonged drinking spree. The deceased, therefore, was not a stranger or invader, coming forcefully, without right or invitation, into the defendant's home. It was held in *Fortune* v. *Commonwealth*, 133 Va. 669, 112 S. E. 861, that: "One may not kill another, even within one's own home or curtilage, merely to punish or subdue him, or compel him to leave the premises, if he has entered peaceably on an implied license, and has no apparent intent to commit a felony." Moreover, the giving of this instruction probably would have tended to confuse the jury, inasmuch as it has in it elements of accidental killing and also elements of self-defense.

The court gave Defendants Instruction No. 17 which correctly states the law regarding the circumstances under which one may kill his adversary in the protection of his home or property.

State's Instruction No. 3, relating to the duration of intention to kill prior to the homicide on the part of the defendant in order to constitute a wilful, deliberate and premeditated killing, has been approved often by this Court, and was properly given in view of the evidence presented in this case. Also, State's Instruction No. 5, which informed the jury that insulting words would neither justify nor excuse an assault upon one's adversary, was properly given.

Defendant's Instructions Nos. 10, 14 and 15, relating to reasonable doubt, were properly refused by the court, inasmuch as they were fully covered by other instructions offered and given on behalf of the defendant.

The assignment of error as to Defendant's Instruction No. 13 is not well taken. It does not correctly state the law applicable to the defense of one's dwelling house. Moreover, Defendant's Instruction No. 17 which was given correctly states the law relating to the rights of the defendant to defend his dwelling house. The facts in this case did not justify the giving of Defendant's Instruction No. 18, to the effect that malice could not be presumed from the infliction of the mortal wound upon the deceased with a dangerous weapon, inasmuch as the defendant did not show that he had been assaulted, struck and beaten by the deceased without fault on the part of the defendant, and after he had declined to engage in a fight with deceased as shown in *State* v. *Donahue*, 79 W. Va. 260, 90 S. E. 834, upon which case the defendant relies.

In *State* v. *Blankenship*, 137 W. Va. 1, 69 S. E. 2d 398, this Court reiterated what it has stated many times before that: "When instructions which fairly and clearly state the law of the case are given, it is not error to refuse other instructions dealing with the same point, even though such instructions may be good.", and "Duplication of instructions is unnecessary and undesirable." To the same effect is *State* v. *Driver*, 88 W. Va. 479, 501, 107 S. E. 189, wherein the Court said: "Where instructions given, no matter on which side, fairly and clearly lay down the law of the case, it is not error to refuse others on the same points, though good."

The defendant's final assignment of error deals with the refusal of the court to give Instruction No. 20, on behalf of the defendant, which is as follows:

"The Court instructs the jury to consider the alleged admissions or statements of the defendant with caution, taking into consideration all

> the circumstances under which they were made,
> and to weigh them in the light of all the sur-
> rounding circumstances as disclosed by the evi-
> dence."

A similar instruction was offered by the State in *State v. Goldizen*, 93 W. Va. 328, 337, 116 S. E. 687, over the objection of the defense, and this Court held upon the facts in that case that it was not error for the trial court to give it. However, the facts in the *Goldizen* case and those in this case are different in that it was there contended that the sheriff and the prosecuting attorney had offered the inducement that they would aid the defendant if he would confess. There is no contention by the defendant in the instant case that the statement made by him to the police officers on the morning after the homicide was induced by threats or promises. The statement was introduced in evidence and read to the jury without objection on the part of the defendant, and there is no denial of its material contents by the defendant, or any other witness. The fact that the defendant was intoxicated the night before the taking of the statement by the police officers, and had taken four capsules, commonly called "yellow jackets", approximately two hours prior to the beginning of the taking of the statement, does not in itself justify the giving of Defendant's Instruction No. 20, in the form offered. This instruction was properly refused by the court.

The jury was fully and correctly informed of the law applicable to accidental killing, defense of person and defense of home, these being the three theories of defense advanced by the defendant. The evidence in this case presented issues of fact for jury determination, the jury resolved those issues against the defendant, and not finding any prejudicial error in the record, we cannot disturb the verdict.

The judgments of the Circuit and Intermediate Courts of Kanawha County are affirmed.

*Affirmed.*