310 S.E.2d 877

**STATE of West Virginia**

v.

**Jeffrey Eugene EVANS.**

**No. 15854.**

Supreme Court of Appeals of West Virginia.

Dec. 15, 1983.

---

**812**

D. Grove Moler, Mullens, for appellant.

Fredrick S. Wilkerson, Asst. Atty. Gen., Charleston, for appellee.

McHUGH, Justice.

Jeffrey Eugene Evans appeals from his conviction, by a jury in the Circuit Court of Wyoming County, of second degree mur- der. The appellant makes five assignments of error: (1) the essential element of malice was not proven beyond a reasonable doubt; (2) a State's instruction, permitting the in- ference of intent, should not have been given; (3) it was error to refuse a defense instruction on reasonable doubt; (4) it was error to refuse a defense instruction on accident; and (5) the appellant's former wife should not have been permitted to testify. We find that the trial court erred in not giving the requested instruction on accidental discharge of the weapon. Con- sequently, we reverse appellant's convic- tion and award him a new trial.

In an indictment handed down on Octo- ber 8, 1980, a grand jury charged the appel- lant with the murder of Ernie Hall. Fol- lowing a trial on May 18, 1981, the appel- lant was convicted of second degree mur- der. He appealed to this Court on August 26, 1981. We reversed the conviction on the ground that the trial court erroneously permitted the appellant's wife to testify against him at trial in violation of the stat- utory privilege against adverse spousal tes- timony. *State v. Evans*, 170 W.Va. 3, 287 S.E.2d 922 (1982).

The appellant was retried on October 29, 1982, on the charge of murder, and he was again convicted of murder in the second degree. On November 19, 1982, a judg- ment order was entered. The appellant was sentenced to an indeterminate term of five to eighteen years in the West Virginia State Penitentiary at Moundsville. The ap- pellant's motion to set aside the verdict and grant a new trial was denied on November 29, 1982.

The facts of this case are set forth in our prior opinion. *State v. Evans*, 170 W.Va. at 3–4, 287 S.E.2d at 923. We do not repeat them here. The evidence at the appellant's retrial was substantially the same as at the first trial, with the excep- tion that the appellant's former wife did not testify about interactions and communi- cations between her and the appellant.[1] Her testimony was confined to her being

---

1. At the time of the second trial, appellant and his wife were divorced, and the ex-wife had remarried.

present near the mobile home, hearing one shot, and then hearing the decedent say, "Man, why'd you do that?"

## I.

The appellant's first assignment of error is that there was insufficient evidence to prove malice beyond a reasonable doubt. Malice is an essential element of second degree murder. *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978); *State v. Ponce,* 124 W.Va. 126, 19 S.E.2d 221 (1942).[2] In syllabus point 4 of *State v. Hamrick,* 112 W.Va. 157, 163 S.E. 868 (1932), we stated:

> Whether malice exists in a particular case is usually a question for the jury, and although in perfectly clear cases, the courts have held that the evidence was not sufficient to show malice even where the jury had found to the contrary, yet malice is a subjective condition of mind, discoverable only by words and conduct, and the significance of the words and conduct of an accused person, whenever there can be doubt about such significance, addresses itself peculiarly to the consideration of the jury.

The customary manner of proving malice in a murder case is the presentation of evidence of circumstances surrounding the killing. *State v. Starkey,* 161 W.Va. at 522, 244 S.E.2d at 223. Such circumstances may include, *inter alia,* the intentional use of a deadly weapon, *State v. Toler,* 129 W.Va. 575, 579–80, 41 S.E.2d 850, 852–53 (1946), words and conduct of the accused, *State v. Hamrick,* 112 W.Va. at 166–67, 163 S.E. at 873, and, evidence of ill will or a source of antagonism between the defendant and the decedent, *State v. Brant,* 162 W.Va. 762, 252 S.E.2d 901, 903 (1979).

We conclude from our review of the trial record that there was sufficient evidence from which the jury could find malice. Evidence was presented below which established a source of antagonism be-

tween the appellant and the victim.[3] Therefore, we find that there was sufficient evidence to convince impartial minds beyond a reasonable doubt that the appellant acted with malice.

## II.

The appellant contends that it was error to give State's Instruction No. 5, whereby "the [trial] court instruct[ed] the jury that there is a permissible inference of fact that a man intends that which he does, or which is the immediate and necessary consequences of his act." In several recent cases, we have held such an instruction to be constitutionally permissible. For example, in syllabus point 3 of *State v. Greenlief,* 168 W.Va. 561, 285 S.E.2d 391 (1981), we held: "An instruction in a criminal trial which allows the jury to infer rather than presume the intent of the defendant avoids the shifting of the burden of proof and is therefore constitutionally permissible." *See also State v. Less,* 170 W.Va. 259, 294 S.E.2d 62 (1981); *State v. White,* 167 W.Va. 374, 280 S.E.2d 114 (1981); *State v. Ferguson,* 165 W.Va. 529, 270 S.E.2d 166 (1980); *State v. Wright,* 162 W.Va. 332, 249 S.E.2d 519 (1978). We find no error in the giving of State's Instruction No. 5.

## III.

Defendant's Instruction No. 15, which was refused by the trial court, would have told the jury that "[a] verdict of 'not guilty' in a criminal case such as the one on trial does not necessarily mean that the innocence of the defendant has been proved; such a verdict means only that guilt of the defendant has not been established beyond a reasonable doubt."

The appellant contends that Instruction No. 15 was an "essential complement" to other instructions concerning the State's burden to prove every element of the offense beyond a reasonable doubt. The ap-

---

**2.** *See State v. Starkey,* 161 W.Va. at 524–528, 244 S.E. at 223–25, for an extensive discussion of the concept of malice.

**3.** The jury in this case may have believed that the shooting was intentional. They may also

have believed the testimony of the Rocchi brothers that the appellant declared on two separate occasions prior to the death of Ernie Hall that Ernie had "messed over" the appellant. Andy Rocchi interpreted the appellant's statement to be indicative of some difficulty in a drug deal.

pellant also contends that he was entitled to have the instruction given on the ground that it presented a theory of the case in the appellant's own language. This latter contention is without merit. The instruction on its face is unrelated to any "theory" of the case. Rather, appellant offered it to elucidate the reasonable doubt standard.[4]

 The former contention also lacks merit. In the recent case of *State v. Ashcraft,* 172 W.Va. at 652, 309 S.E.2d 600 at 612–613 (1983), we said,

> [i]t is well established in West Virginia that, "it is not reversible error to refuse to give instructions offered by a party that are adequately covered by other instructions given by the court." Syllabus Point 20, *State v. Hamric,* 151 W.Va. 1, 151 S.E.2d 252 (1966). *See also State v. Helmick,* 169 W.Va. 94, 286 S.E.2d 245 (1982); *State v. Shaffer,* 138 W.Va. 197, 75 S.E.2d 217 (1953); *State v. Blankenship,* 137 W.Va. 1, 69 S.E.2d 398 (1952) *overruled, in part, on other grounds, State v. McAboy,* 160 W.Va. 497, 236 S.E.2d 431 (1977); *State v. Lewis,* 133 W.Va. 584, 57 S.E.2d 513 (1949).

The jury in the case *sub judice* was properly and adequately instructed on the application of the reasonable doubt standard in a criminal trial. For the foregoing reasons, there was no error in the refusal of Defendant's Instruction No. 15.

## IV.

The appellant's defense to the murder charge was that the gun accidentally discharged. The appellant testified that he left the trailer for a few minutes. When he returned, Ernie Hall was handling one of the appellant's guns—a 9mm semi-automatic pistol—which the appellant knew to be loaded. He asked Hall to give him the gun, reaching for it with his left hand. At the same time, the appellant looked away from Hall and reached with his right hand into a cabinet to get a bong for smoking marihuana. Hall passed the gun to the appellant who took hold of it by the handle. As the gun came into his hand, it discharged, firing the fatal bullet into Hall's face just above the right eyebrow.

In support of his theory of the case, the appellant offered Defendant's Instruction No. 16, which reads as follows: "If you, the jury, believe from the evidence that the death of Ernie Hall was caused by an accidental discharge of the weapon introduced into evidence, you shall find defendant not guilty as charged." An identical instruction was given, over the prosecutor's objection, at the appellant's first trial. Upon retrial, the prosecuting attorney objected when the instruction was offered on the ground that it was not supported by the evidence. The trial court, on the other hand, commented: "It's misleading because it would rule out involuntary manslaughter." The prosecuting attorney repeated his objection, and the trial court then refused the instruction. The State, in its brief, argues that both the grounds expressed by the court and by the prosecutor at trial justify refusal of the instruction.

The appellant contends that the instruction reflects his theory of the case, is a proper statement of the law, does not eclipse a verdict of guilty of involuntary manslaughter, and therefore should have been given. We agree with appellant's contentions.

 Accidental death is a recognized defense to a murder charge in West Virginia. *State v. White,* 171 W.Va. 658, 301 S.E.2d 615 (1983).[5] The trial testimony of the appellant provided sufficient evidentiary support for the instruction on accident. Indeed, the instruction is a crystallization of the appellant's defense theory. In *State v. Lawson,* 128 W.Va. 136, 36 S.E.2d 26 (1945), we explored the pertinent authoritative texts and cases in search of a definition of "involuntary manslaughter." Our

---

4. We discourage the use of instructions which attempt to define reasonable doubt beyond the standard charge. *See State v. Ashcraft,* 309 S.E.2d 600 at 613, (W.Va. 1983), and cases cited therein. *See also State v. Peyatt,* 173 W.Va. 317, 315 S.E.2d 574, No. 15799 (W.Va. filed December 15, 1983); syl. pt. 2, *State v. Keffer,* 168 W.Va. 59, 281 S.E.2d 495 (1981).

5. *See* cases cited in *State v. White,* 171 W.Va. at 661, 301 S.E.2d at 617 n. 3.

research effort is memorialized in syllabus point 2 of *Lawson*, which provides: "A person may be guilty of involuntary manslaughter when he performs a lawful act in an unlawful manner, resulting in the unintentional death of another." In explicating this rule, we concluded that "the State [is required] to show that the act, or the manner of the performance of the act, for which conviction [of involuntary manslaughter] is sought is unlawful and culpable and something more than the simple negligence, so common in everyday life, in which there is no claim that anyone has been guilty of wrong-doing." *State v. Lawson*, 128 W.Va. at 148, 36 S.E.2d at 32. *See also, State v. Vollmer*, 163 W.Va. 711, 259 S.E.2d 837 (1979).

Assuming that the jury was properly instructed on the elements of involuntary manslaughter,[6] Defendant's Instruction No. 16, if given, would not have precluded a verdict of guilty of involuntary manslaughter. The State's reliance on language from *Lawson, supra,* indicating that involuntary manslaughter may be committed accidentally, is misplaced because the passage relied upon by the State is a direct citation in *Lawson* of a South Carolina case, *State v. Clardy*, 73 S.E. 340, 53 S.E. 493 (1906), included only to show that our review of cases in the area revealed "hopeless confusion." *State v. Lawson*, 128 W.Va. at 141–43, 36 S.E.2d at 29.

In syllabus point 10 of *State v. Legg*, 59 W.Va. 315, 53 S.E. 545 (1906), we stated:

> Where one, upon an indictment for murder, relies upon accidental killing as a defense, and there is evidence tending in an appreciable degree, to establish such defense, it is error to refuse to instruct the jury that if they believe from the evidence that the killing was the result of an accident, they should find the defendant not guilty.

We conclude, therefore, that the trial court's refusal to give a proper instruction on accidental discharge of the weapon constitutes reversible error.

## V.

The appellant's final assignment of error is that his former wife was permitted to testify without the appellant's consent in violation of the privilege against adverse spousal testimony. It may be recalled that the appellant's former spouse testified, as a witness for the State, that while standing approximately ten to fifteen feet from the

---

**6.** Two instructions on involuntary manslaughter were given. State's Instruction No. 2, given without objection, reads, in pertinent part: "[I]nvoluntary manslaughter is when one person, while engaged in an unlawful act, unintentionally causes the death of another person, or when engaged in a lawful act negligently causes the death of another person."

Defendant's Instruction No. 2, given over the objection of the State, reads:

Before Jeffrey Evans can be convicted of involuntary manslaughter, the State of West Virginia must overcome the presumption that he is innocent and prove to the satisfaction of the jury beyond a reasonable doubt that:
1. the defendant, Jeffrey Evans
2. in Wyoming County, West Virginia
3. on or about the 19th day of September, 1980
4. did shoot a gun
(a) in an unlawful manner
 or
(b) a reckless manner
5. in reckless disregard of the life and safety of Ernie Hall
6. and in committing such act at said time and place did
7. cause the death of
8. Ernie Hall

If after impartially considering, weighing and comparing all the evidence, the jury and each member of the jury is convinced beyond a reasonable doubt of the truth of the charge as to each of these elements of involuntary manslaughter, you may find Jeffrey Evans guilty of involuntary manslaughter as charged in the indictment. If the jury or any member of the jury has a reasonable doubt of the truth of the charge as to any one or more of these elements of involuntary manslaughter, you shall find Jeffrey Evans not guilty of involuntary manslaughter.

Although the giving of these instructions is not assigned as error, we notice a conflict between the two instructions with respect to the degree of culpability required to be proven in order to convict the defendant. We notice, too, that *State v. Lawson, supra,* specifically disapproved an instruction nearly identical to State's Instruction No. 2, on the ground that it improperly defined involuntary manslaughter.

trailer, she heard one shot and then a voice say, "Man, why'd you do that?" She recognized the voice as that of Ernie Hall.

At common law, spouses were incompetent to testify for or against each other in either a civil or criminal proceeding except in an action or suit between them. *Kilgore v. Hanley*, 27 W.Va. 451 (1886). *See also Hawkins v. United States*, 358 U.S. 74, 75, 79 S.Ct. 136, 137, 3 L.Ed.2d 125, 127 (1958). Our code changed the common law rule. *W.Va.Code*, 57–3–2 [1931] provides that "[h]usband and wife shall be competent witnesses to testify for or against each other in all cases, civil and criminal, except as otherwise provided."

In 1882, when the legislature first deemed spouses competent to testify against one another, such testimony was only allowed "at the request of the accused." Acts 1882, ch. 151, *W.Va.Code*, ch. 152, § 19 (1923). The legislature thereby created a privilege which is currently embodied in *W.Va.Code*, 57–3–3 [1931]:

> In criminal cases husband and wife shall be allowed, and, subject to the rules of evidence governing other witnesses, may be compelled to testify in behalf of each other, but neither shall be compelled, nor, without the consent of the other, allowed to be called as a witness against the other except in the case of a prosecution for an offense committed by one against the other, or against the child, father, mother, sister or brother of either of them. The failure of either husband or wife to testify, however, shall create no presumption against the

accused, nor be the subject of any comment before the court or jury by anyone.

■■■ It is clear from the plain language of *W.Va.Code*, 57–3–3 [1931], that the privilege may be invoked by a defendant spouse to prevent the State from calling the other spouse as a witness where the proceeding occurs during the tenure of the marriage. The issue now before us is whether the statutory privilege may be invoked if, at the time of the trial, the defendant and the witness are divorced. The appellant urges that *W.Va.Code*, 57–3–3 [1931], applies because the events about which his former wife testified occurred during their marriage. We disagree, and we hold, therefore, that the privilege may only be used when there is a lawful marital relationship in existence at the time of the trial.

■ Other jurisdictions are in virtually unanimous agreement that divorce prior to a criminal trial terminates the privilege of a defendant ex-spouse preventing the other from testifying adversely at such trial, except with respect to confidential communications during the marriage.[7] In *Stewart v. Commonwealth*, 219 Va. 887, 252 S.E.2d 329 (1979), the Supreme Court of Virginia construed a statute substantially similar to ours, *Va.Code* § 8–288 (Cum.Supp.1976) (now codified at *Va.Code* § 19.2–271.2 (Cum.Supp.1982)), and held that "[t]he privilege of an accused to prevent his spouse from testimony against him is determined at the time of trial and depends upon the couple being validly married at that time.

---

**7.** In West Virginia confidential communications are still privileged after divorce. *W.Va.Code*, 57–3–4 [1931], provides:

> Neither husband nor wife shall, without the consent of the other, be examined in any case as to any confidential communication made by one to the other while married, *nor shall either be permitted, without such consent, to reveal in testimony after the marriage relation ceases any such communication made while the marriage existed.* (emphasis added.)

It is clear that the testimony of appellant's former wife did not reveal any privileged confidential communications. These are limited to communications between husband and wife which are intended to be private, *Nash v. Fidelity-Phenix Fire Insurance Co.*, 106 W.Va. 672, 675–76, 146 S.E. 726, 727 (1929), *see also Pereira*

*v. United States*, 347 U.S. 1, 6, 74 S.Ct. 358, 361, 98 L.Ed. 435, 443 (1954); or intended to be made in the confidence of matrimony, *Fuller v. Fuller*, 100 W.Va. 309, 312–13, 130 S.E. 270, 271 (1925). A communication between husband and wife, in the known presence of a third person, is not so confidential as to be privileged, *Fuller, supra.*

It appears obvious that a statement of a third person, such as the decedent in this case, is not a communication between husband and wife. If by some stretch of the imagination, we were to find that Ernie Hall's statement was part of a communication between the appellant and his wife, it would not be privileged because the touchstones of privacy and confidentiality are lacking.

G. Lilly, *An Introduction to the Law of Evidence,* § 89 at 327 (1978); McCormick, *Evidence* § 85 at 171 (2d ed. 1972)." 219 Va. at 891, 252 S.E.2d at 330. *See also* 8 *Wigmore on Evidence* § 2237 (McNaughton rev. 1961); 81 Am.Jur.2d *Witnesses* § 132 (Cum.Supp.1983); *Annot.,* 38 A.L. R.2d 570, 575–77 (Supp.1983).

Further, it is clear from the plain language of *W.Va.Code,* 57–3–3 [1931], that the privilege against adverse spousal testimony contained therein, applies only where the parties stand in the relation of "husband and wife." Accordingly, where the parties have been divorced, and the marital relationship terminated, the statute is not applicable. *See State v. Evans, supra.* We therefore conclude that the trial court did not err in permitting the appellant's spouse to testify against him.

For the foregoing reasons, the appellant's conviction is reversed, and this case is remanded to the Circuit Court of Wyoming County where the appellant should be retried.

Reversed and remanded.