# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 16-0268** (Wood County 14-F-295)

**Larry Gale Owens,**
**Defendant Below, Petitioner**

**FILED**

**September 25, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Larry Gale Owens, by counsel Travis Sayre, appeals the Circuit Court of Wood County's March 14, 2016, order sentencing him to forty years of imprisonment following his second-degree murder conviction. Respondent State of West Virginia, by counsel Shannon Frederick Kiser, filed a response. On appeal, petitioner contends that the circuit court erred in failing to grant various motions concerning the sufficiency of the evidence and in failing to admit certain evidence.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The evidence at trial showed that, on June 17, 2014, Jeffrey Hughart and five other individuals convened at petitioner's home, which was located along a river, to fish and drink alcohol. Later in the evening, petitioner and Mr. Hughart got in to a physical altercation on the home's dock. Michelle Whitlatch, who was present at the dock, testified to seeing Mr. Hughart "head-butt" petitioner and petitioner punch Mr. Hughart in the mouth. After seeing this, Ms. Whitlatch went to the home to alert another guest, John Gann, to the altercation. As she walked from the dock to the house, she turned around to see Mr. Hughart with a white pipe, later identified to be a lightweight shower rod, and petitioner with a wooden walking stick. Ms. Whitlatch turned back around and headed into the home just as Mr. Hughart started to swing. Ms. Whitlatch informed Mr. Gann that petitioner and Mr. Hughart were fighting and asked him to go outside to break up the fight.

When Mr. Gann exited the house to attempt to break up the fight, he saw petitioner repeatedly strike Mr. Hughart with the walking stick. Mr. Hughart was unconscious on the ground on his side, not defending himself. Mr. Gann saw petitioner hit Mr. Hughart in the ribs and on the head with the walking stick, which was described as being approximately six feet in length and two and one half inches in diameter. Petitioner, as he was striking Mr. Hughart, said

1

something to the effect of Mr. Hughart was "getting what he deserved." This comment stemmed from a prior altercation between Mr. Hughart and petitioner during which Mr. Hughart knocked several of petitioner's teeth out. Mr. Gann, as he observed petitioner striking Mr. Hughart, testified that he knew that Mr. Hughart "was in trouble." Mr. Gann was able to get to petitioner and take him toward the house. As he took petitioner toward the house, he did not see Mr. Hughart move. To Mr. Gann's knowledge, Mr. Hughart never regained consciousness. At this time, petitioner told Mr. Gann that he hoped Mr. Hughart was dead.

About thirty minutes after the altercation, Mr. Gann, petitioner, and another guest, Ashley McGrew, placed Mr. Hughart in the bed of petitioner's truck and took him to his home. Once they reached Mr. Hughart's home, Mr. Gann grabbed Mr. Hughart under his arms, pulled him out of the bed of the truck, and placed him in the yard. A neighbor noticed Mr. Hughart on the ground bleeding and called 911. Mr. Hughart was taken to the hospital and pronounced dead.

Dr. James Kaplan performed an autopsy on Mr. Hughart. Dr. Kaplan noted a scalp laceration that extended to the bone, a skull fracture, contusions on Mr. Hughart's back, a fractured rib, and shin injuries. Dr. Kaplan opined that Mr. Hughart's cause of death was blunt force trauma to the head, noting that the force of the injury to Mr. Hughart's head "would have been a very, very forceful blow, like swinging a baseball bat at someone." Petitioner, conversely, was observed by Wood County Deputy Sheriff Michael Cochran to have no injury, save for an older, scabbed-over scratch on his arm.

Prior to trial, petitioner moved to use the statement of Ashley McGrew, a witness to the incident from which petitioner's murder charge stemmed. Ms. McGrew died during the pendency of petitioner's case. The circuit court found that this statement did not meet any hearsay exception, and petitioner was prohibited from introducing it at trial. During trial, petitioner moved to use the complete video of his statement given to law enforcement. This motion was similarly denied on the ground that it lacked relevance. Petitioner also moved for summary judgment following presentation of the State's case-in-chief, for acquittal at the conclusion of his case-in-chief, and for a new trial at the conclusion of trial. All of these motions were denied. The jury returned a verdict of guilty of second-degree murder, and petitioner was sentenced to forty years of incarceration. It is from the sentencing order that petitioner appeals.

This Court has held that,

> [i]n reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 641, 535 S.E.2d 484, 485 (2000).

On appeal, petitioner first contends that the circuit court erred in failing to grant his motion for summary judgment following the State's case-in-chief, motion for acquittal at the end

2

of petitioner's case-in-chief, and motion for a new trial following the conclusion of the trial. Petitioner asserts that the State failed to prove second-degree murder and that petitioner was not acting in self-defense beyond a reasonable doubt. Specifically, petitioner claims that the State failed to prove that petitioner acted with malice. Petitioner argues that the evidence establishes that he was first attacked by Mr. Hughart and that, in defending himself, he fatally struck Mr. Hughart. Petitioner also contends that he met his burden of establishing self-defense as there was evidence presented at trial that Mr. Hughart instigated the fight that resulted in his death. Further, petitioner asserts that he had previously been involved in an altercation with Mr. Hughart wherein Mr. Hughart punched petitioner and knocked several of his teeth out. Because of this prior altercation, petitioner claims he had a "rising fear that he himself would be killed[.]"

With regard to appellate review of the sufficiency of the evidence presented at trial, this Court has held that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Further,

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

*Id.* at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part.

With respect to petitioner's argument that the State failed to prove malice beyond a reasonable doubt, we note that "[m]alice, express or implied, is an essential element of murder in the second degree, and if absent the homicide is of no higher grade than voluntary manslaughter." Syl. Pt. 2, *State v. Clayton*, 166 W.Va. 782, 277 S.E.2d 619 (1981). Furthermore,

> [w]hether malice exists in a particular case is usually a question for the jury, and although in perfectly clear cases, the courts have held that the evidence was not sufficient to show malice even where the jury had found to the contrary, yet malice is a subjective condition of mind, discoverable only by words and conduct,

3

and the significance of the words and conduct of an accused person, whenever there can be doubt about such significance, addresses itself peculiarly to the consideration of the jury.

Syl. Pt. 1, *State v. Evans*, 172 W.Va. 810, 310 S.E.2d 877 (1983) (citation omitted). Proving malice typically involves "the presentation of evidence of circumstances surrounding the killing," and such circumstances can include the intentional use of a deadly weapon, the conduct and words of the defendant, and "evidence of ill will or a source of antagonism between the defendant and the decedent." *Id.* at 813, 310 S.E.2d at 879.

Viewing the evidence in the light most favorable to the State, we find that there was sufficient evidence from which the jury could find malice. Petitioner beat Mr. Hughart with a wooden walking stick, even after Mr. Hughart was unresponsive on the ground. After the beating, petitioner remarked that Mr. Hugart "got what he deserved" and that he hoped Mr. Hughart died.

Petitioner also claims that he sustained his burden of establishing that he killed Mr. Hughart in an act of self-defense. "It is peculiarly within the province of the jury to weigh the evidence upon the question of self-defense, and the verdict of a jury adverse to that defense will not be set aside unless it is manifestly against the weight of the evidence." Syl. Pt. 2, *State v. Whittaker*, 221 W.Va. 117, 650 S.E.2d 216 (2007) (citation omitted). "Under his plea of self-defense, the burden of showing the imminency of the danger rests upon the defendant. No apprehension of danger previously entertained will justify the commission of the homicide; it must be an apprehension existing at the time the defendant fired the fatal shot." *Id.* at 121, 650 S.E.2d at 220, Syl. Pt. 7.

In this case, we find that the evidence is sufficient to conclude that petitioner failed to establish that he was in immediate apprehension of danger. Although Mr. Hughart was observed holding a "white pipe," the only implement found at the scene to match that description was a lightweight aluminum shower rod. Petitioner was found to have sustained no injuries during his altercation with Mr. Hughart. Mr. Hughart, on the other hand, sustained a fatal skull fracture, a fractured rib, and multiple contusions. Mr. Gann testified that he had to stop petitioner from further beating Mr. Hughart, who was unconscious by this time. "[N]ormally one can return deadly force only if he reasonably believes that the assailant is about to inflict death or serious bodily harm; otherwise, where he is threatened only with non-deadly force, he may use only non-deadly force in return." *State v. W.J.B.*, 166 W.Va. 602, 608, 276 S.E.2d 550, 554 (1981) (citations omitted).

Petitioner's next assignment of error concerns certain evidentiary rulings made by the trial court. Petitioner asserts that his videotaped statement to one of the investigating officers should have been played in its entirety and that a statement from Ashley McGrew, a now-deceased witness, should have been admitted.

"The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts

to an abuse of discretion." Syl. Pt. 1, *State v. Harris*, 216 W.Va. 237, 605 S.E.2d 809 (2004) (internal quotations and citations omitted). This Court has also held that

> [t]he West Virginia Rules of Evidence . . . allocate significant discretion to the trial court in making evidentiary . . . rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary . . . rulings of the circuit court under an abuse of discretion standard.

*Id.* 238, 605 S.E.2d at 810, Syl. Pt. 2 (internal quotations and citations omitted).

During petitioner's videotaped statement, approximately eight hours after Mr. Hughart's murder, he learned that Mr. Hughart has died. Petitioner became distraught and began to cry. Following the trial court's ruling that this portion of the statement lacked relevance, it was not shown to the jury. Petitioner claims, however, that the excluded portion is relevant to the malice element of second-degree murder. Petitioner also argues that, to the extent it amounts to hearsay, an exception to the prohibition against the use of hearsay applies.

Under West Virginia Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." "Irrelevant evidence is not admissible." *Id.* at 402. Finally, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* at 403. We find that the circuit court did not abuse its discretion in excluding the portion of petitioner's videotaped statement wherein he learns of Mr. Hughart's death. Petitioner's statement was given approximately eight hours after Mr. Hughart's murder and does not in any way speak to whether petitioner acted in self-defense or to whether he possessed malice at the time that he murdered Mr. Hughart.

Furthermore, even assuming some minimal probative value, such value is outweighed by the statement's potential to mislead the jury into believing that petitioner's conduct eight hours following the murder speaks to his conduct at the time of the murder. Additionally, given that Detective Moody testified that petitioner became visibly upset after learning that Mr. Hughart had died, the omitted portion of the videotape was cumulative. As such, the circuit court did not err in excluding this portion of his videotaped statement.[1]

Lastly, petitioner contends that the circuit court erred in excluding a statement from Ashley McGrew, who died during the pendency of petitioner's case. Ms. McGrew gave a statement to an investigator, Debra Hendershot, who was hired by petitioner. Ms. McGrew told Ms. Hendershot that Mr. Gann, in removing Mr. Hughart from the back of the truck and placing him in his yard following the beating, may have hit Mr. Hughart's head on the truck. Petitioner

---

[1]Because we find that the omitted portion of the statement lacked relevance, and was therefore inadmissible, we need not consider the hearsay arguments raised by petitioner.

acknowledges that Ms. McGrew's statement constitutes hearsay, but claims that it is admissible as a statement against interest under West Virginia Rule of Evidence 804(b)(3).

West Virginia Rule of Evidence 804(b)(3) provides one exception to the rule against hearsay as follows:

> A statement that:
>
> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and
>
> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Further,

> [t]o satisfy the admissibility requirements under Rule 804(b)(3) of the West Virginia Rules of Evidence, a trial court must determine: (a) The existence of each separate statement in the narrative; ([b]) whether each statement was against the penal interest of the declarant; ([c]) whether corroborating circumstances exist indicating the trustworthiness of the statement; and (d) whether the declarant is unavailable.

Syl. Pt. 9, *State v. Milburn*, 204 W.Va. 203, 511 S.E.2d 828 (1998).

Here, the circuit court found that Ms. McGrew's statement was not sufficiently trustworthy or against her penal interest. In giving the statement to the private investigator, Ms. McGrew was not under oath or subject to cross-examination. Additionally, law enforcement was already aware of her involvement in the events surrounding Mr. Hughart's death. Her statement that Mr. Gann may have caused Mr. Hughart's head to hit the ground was not against her own penal interest. Accordingly, we find that the circuit court did not abuse its discretion in finding that Ms. McGrew's statement did not meet the requirements for admissibility under West Virginia Rule of Evidence 804(b)(3).

For the foregoing reasons, the circuit court's March 14, 2016, order sentencing petitioner is hereby affirmed.

Affirmed.

**ISSUED**: September 25, 2017

6

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker