# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 17-0611** (Wyoming County 14-F-176)

**James Marshall Green,**
**Defendant Below, Petitioner**

**FILED**

**October 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner James Marshall Green, by counsel Thomas H. Evans III, appeals the Circuit Court of Wyoming County's June 12, 2017, order sentencing him to ten years of incarceration following his second-degree murder conviction. Respondent State of West Virginia, by counsel Benjamin F. Yancey III, filed a response. On appeal, petitioner contends that the circuit court erred in denying his motions for judgment of acquittal, that this State's murder statute is unconstitutional, and that the circuit court committed reversible error in failing to declare a mistrial.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 6, 2014, Charity Lester drove Jesse Graybeal and his brother, Ernie Cline, to Margaret Broyles's home so that Mr. Graybeal could speak with Ms. Broyles about cutting her lawn and, because he did not have running water at his home, to get fresh water for his dogs from an outside spigot. Ms. Broyles permitted Mr. Graybeal to obtain water from the spigot, and he had done so many times before. As he was getting the water, petitioner, who was assisting Ms. Broyles with her bills, exited her home. Mr. Graybeal assured petitioner that he was permitted to get the water. After getting the water, Mr. Graybeal attempted to enter into Ms. Broyles's home to discuss cutting her lawn. Petitioner then pulled a gun from his pocket, cocked it, and pointed it at Mr. Graybeal's chest. Mr. Graybeal threw his hands up and asked petitioner, "hey, man[,] what is your problem?" Mr. Graybeal grabbed petitioner's arm and attempted to wrest the gun from petitioner. Petitioner shot Mr. Graybeal. At the same time, Mr. Cline, who had been waiting in Ms. Lester's car, exited the car and ran toward his brother. Petitioner shot Mr. Cline four times. Mr. Cline ultimately died from the bullet wounds. Mr. Graybeal survived.

On October 7, 2014, petitioner was indicted on one count of first-degree murder of Mr. Cline and one count of attempted murder of Mr. Graybeal. Petitioner's trial commenced on June

1

14, 2016. On June 23, 2016, the jury found petitioner guilty of second-degree murder, but acquitted him of the attempted murder charge. The circuit court sentenced petitioner to ten years of incarceration for his second-degree murder conviction on November 7, 2016. For purposes of an appeal, the court entered a resentencing order on June 12, 2017. It is from this order that petitioner appeals.

Petitioner's first argument on appeal is that the circuit court erred in denying his motions for judgment of acquittal at the close of the State's case-in-chief and at the conclusion of all the evidence. Petitioner contends that the evidence supported his theory that he acted in self-defense and without malice. Accordingly, petitioner argues, on the one hand, that the State proved nothing more than voluntary manslaughter, but also claims that the State "failed to prove [that petitioner] possessed the specific intent to kill necessary to maintain a conviction for [v]oluntary manslaughter or second[-]degree murder."

This Court applies a de novo standard of review to appeals from rulings on a motion for judgment of acquittal:

> The trial court's disposition of a motion for judgment of acquittal is subject to our *de novo* review; therefore, this Court, like the trial court, must scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt.

*State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996). Regarding our review of a claim alleging insufficiency of the evidence, this Court has held that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Further,

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

2

*Id.* at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part.

With respect to petitioner's argument that the State failed to prove malice, we have stated that "[m]alice, express or implied, is an essential element of murder in the second degree, and if absent the homicide is of no higher grade than voluntary manslaughter." Syl. Pt. 2, *State v. Clayton*, 166 W.Va. 782, 277 S.E.2d 619 (1981). Furthermore,

> [w]hether malice exists in a particular case is usually a question for the jury, and although in perfectly clear cases, the courts have held that the evidence was not sufficient to show malice even where the jury had found to the contrary, yet malice is a subjective condition of mind, discoverable only by words and conduct, and the significance of the words and conduct of an accused person, whenever there can be doubt about such significance, addresses itself peculiarly to the consideration of the jury.

Syl. Pt. 1, *State v. Evans*, 172 W.Va. 810, 310 S.E.2d 877 (1983) (citation omitted). Proving malice typically involves "the presentation of evidence of circumstances surrounding the killing," and such circumstances can include the intentional use of a deadly weapon, the conduct and words of the defendant, and "evidence of ill will or a source of antagonism between the defendant and the decedent." *Id.* at 813, 310 S.E.2d at 879.

At petitioner's trial, Mr. Graybeal testified that he did not threaten petitioner in any way. Rather, he testified that he assured petitioner that he was permitted to obtain water from Ms. Broyles's spigot and asked him where Ms. Broyles was. Without provocation, petitioner pulled a gun, pointed it at Mr. Graybeal, shot Mr. Graybeal, and shot and killed Mr. Cline, who only approached petitioner in an effort to help Mr. Graybeal. The jury found that this evidence of petitioner's intentional use of a deadly weapon without justification was sufficient to support its determination that petitioner acted with malice, and not in defense of himself.[1] Based on the evidence presented at trial, we concur with the jury's finding and conclude that this is not a "perfectly clear case" where the evidence was not sufficient to show malice. *Id.* at 811, 310 S.E.2d at 878, Syl. Pt. 1. Additionally, "if one voluntarily does an act, the direct and natural tendency of which is to destroy another's life, it fairly may be inferred, in the absence of

_____

[1]We also note that "[i]t is peculiarly within the province of the jury to weigh the evidence upon the question of self-defense, and the verdict of a jury adverse to that defense will not be set aside unless it is manifestly against the weight of the evidence." Syl. Pt. 2, *State v. Whittaker*, 221 W.Va. 117, 650 S.E.2d 216 (2007). In addition to the fact that the evidence outlined above undermines petitioner's claim of self-defense, we also observe that he fails to identify any evidence from the record that supports his assertion that he acted in self-defense or that the shooting was accidental. In fact, petitioner's brief lacks even a single citation to the record. For the additional reasons that petitioner has failed to identify evidence that supports his claim and file a brief that is compliant with Rule 10 of the West Virginia Rules of Civil Procedure, his claim must fail.

evidence to the contrary, that the destruction of that other's life was intended." *LaRock*, 196 W.Va. at 305, 470 S.E.2d at 624. Thus, we find no merit to petitioner's assertion concerning an intent to kill. As a result, the circuit court did not err in denying petitioner's motions for judgment of acquittal.

Petitioner's second argument is that West Virginia Code § 61-2-1 is unconstitutionally vague. Petitioner claims that the statute "fails to delineate what conduct is prohibited by said statute with 'sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication.'"

West Virginia Code § 61-2-1 provides that

[m]urder by poison, lying in wait, imprisonment, starving, or by any willful, deliberate and premediated killing, or in the commission of, or attempt to commit, arson, kidnapping, sexual assault, robbery, burglary, breaking and entering, escape from lawful custody, or a felony offense of manufacturing or delivering a controlled substance as defined in article four, chapter sixty-a of this code, is murder of the first degree. All other murder is murder of the second degree.

We have previously decided that this statute is not unconstitutionally vague:

[I]t is clear that West Virginia Code § 61-2-1 is constitutional, as it plainly sets forth the prohibited conduct; that is to say, individuals are prohibited from committing murder. While the statute in question is brief, it is abundantly clear that any murder not described as first-degree murder constitutes second-degree murder.

*State v. Payne*, No. 15-0582, 2016 WL 6835733, *6 (W.Va. Nov. 21, 2016)(memorandum decision). Accordingly, this claim has no merit.

Finally, petitioner assigns as error the circuit court's failure to declare a mistrial. Petitioner argues that the State "overused" speculation and conjecture during its opening statement and closing argument. Petitioner claims that the State portrayed him "as a violent individual who shot two individuals as they approached him on a porch, while ignoring the fact that the [p]etitioner is a 120[-]pound man being approached and jumped by two young men with extensive criminal records." Petitioner also claims that the jury heard evidence regarding a statement he made that was previously suppressed. Lastly, petitioner asserts that a juror contacted the prosecuting attorney by telephone during the trial, but "despite the unusual direct contact, the trial continued." Petitioner failed to object or move for a mistrial, but contends that the errors are subject to a plain error analysis.

We decline to address the claims within petitioner's final assignment of error. Rule 10(c) of the West Virginia Rules of Appellate Procedure requires a petitioner's argument to "contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court

4

may disregard errors that are not adequately supported by specific references to the record on appeal." Petitioner's brief is devoid of citations to the record. Additionally, petitioner fails to quote any specific instance of conjecture or speculation in the State's opening statement or closing argument, fails to explain how "it appears the jury improperly relied on the conjecture[,]" fails to quote instances where suppressed evidence purportedly was admitted,[2] and fails to substantiate his assertion that "it appears that either an outside influence or improper compromise verdict was reached in this case" following juror contact with the prosecutor.[3] Petitioner's "skeletal arguments," which are nothing more than assertions, fail to preserve his claims. *State, Dep't of Health and Human Res. ex rel. Robert Michael B. v. Robert Morris N.*, 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995) (citation omitted). Indeed, "Judges are not like pigs, hunting for truffles buried in briefs." *Id.* (citation omitted).

For the foregoing reasons, the circuit court's June 12, 2017, resentencing order is hereby affirmed.

Affirmed.

**ISSUED**:  October 19, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II suspended and therefore not participating

---

[2]On this point, we note that petitioner admits that "the lower court did its best to prevent the State from suborning improper and unduly prejudicial evidence[.]"

[3]The State asserts that it "made a conscious effort to find any information in the appendix record to verify" petitioner's improper juror contact claim, but it "was unable to find any such information."